23-659
*E. Fork Funding LLC v. U.S. Bank, Nat'l Ass'n*

# In the
# United States Court of Appeals
## FOR THE SECOND CIRCUIT

———————

AUGUST TERM 2023
No. 23-659

EAST FORK FUNDING LLC,
*Plaintiff-Appellee,*

NEW YORK STATE ATTORNEY GENERAL,
*Intervenor,*

v.

U.S. BANK, NATIONAL ASSOCIATION, AS TRUSTEE FOR GREENPOINT
MORTGAGE FUNDING TRUST MORTGAGE PASS-THROUGH
CERTIFICATES, SERIES 2006-AR6,
*Defendant-Appellant.*

———————

On Appeal from the United States District Court
for the Eastern District of New York

———————

ARGUED: FEBRUARY 29, 2024
DECIDED: OCTOBER 1, 2024

———————

Before:      LOHIER and MENASHI, *Circuit Judges*, and LIMAN, *Judge*.[*]

In 2020, Plaintiff-Appellee East Fork Funding LLC filed this quiet title action against Defendant-Appellant U.S. Bank, N.A., on a mortgage recorded against East Fork's property. The mortgage had already been subject to three foreclosure actions, two of which had been voluntarily discontinued by the mortgagee. The district court granted summary judgment in favor of East Fork, holding that under the Foreclosure Abuse Prevention Act ("FAPA"), enacted in December 2022, the voluntary discontinuances did not reset the six-year statute of limitations to bring a foreclosure action. The statute of limitations therefore continued to run from the commencement of the first foreclosure action in 2010 and ran out six years later, entitling East Fork to quiet title. On appeal, U.S. Bank argues that FAPA does not apply to voluntary discontinuances that took place prior to FAPA's enactment, that such retroactive application would be unconstitutional, and that under pre-FAPA law the voluntary discontinuances did reset the statute of limitations.

Whether and to what extent FAPA applies retroactively to voluntary discontinuances is a novel question of state law and answering it is necessary to resolve this appeal. We therefore certify the following question to the New York Court of Appeals: Whether Sections 4 and/or 8 of the Foreclosure Abuse Prevention Act, codified at N.Y. C.P.L.R. 203(h) and 3217(e), respectively, apply to a unilateral voluntary discontinuance taken prior to the Act's enactment.

Judge Menashi concurs in a separate opinion. Judge Liman concurs in a separate opinion.

---

[*] Judge Lewis J. Liman of the United States District Court for the Southern District of New York, sitting by designation.

ANTHONY R. FILOSA, Rosenberg, Fortuna & Laitman, LLP, Garden City, NY (Steven A. Biolsi, Biolsi Law Group, P.C., New York, NY, *on the brief*), *for Plaintiff-Appellee*.

MARK S. GRUBE, Senior Assistant Solicitor General (Barbara D. Underwood, Solicitor General, Ester Murdukhayeva, Deputy Solicitor General, *on the brief*), *for* Letitia James, Attorney General of the State of New York, New York, NY, *for Intervenor*.

PATRICK G. BRODERICK (Steven Lazar, *on the brief*), Greenberg Traurig, LLP, New York, NY, *for Defendant-Appellant*.

MENASHI, *Circuit Judge*:

In 2020, Plaintiff-Appellee East Fork Funding LLC filed this quiet title action against Defendant-Appellant U.S. Bank, N.A., on a mortgage recorded against East Fork's property. East Fork purchased the property in September 2016. At that time, the mortgage had already been subject to three foreclosure actions, two of which had been voluntarily discontinued by the mortgagee: (1) an action commenced in 2010 and voluntarily discontinued in 2011, (2) an action commenced in 2011 and voluntarily discontinued in 2016, and (3) an action commenced in 2016 for which an amended judgment of foreclosure and sale was issued in 2022.

The district court granted summary judgment in favor of East Fork, holding that under the Foreclosure Abuse Prevention Act ("FAPA"), enacted by the New York State legislature in December

2022, the voluntary discontinuances did not reset the six-year statute of limitations to bring a foreclosure action. The statute of limitations therefore continued to run from the commencement of the first foreclosure action in 2010 and ran out six years later, entitling East Fork to quiet title. On appeal, U.S. Bank argues that FAPA does not apply retroactively to voluntary discontinuances that occurred prior to FAPA's enactment, that such retroactive application would be unconstitutional, and that under pre-FAPA law the voluntary discontinuances did reset the statute of limitations.

Whether and to what extent FAPA applies retroactively to voluntary discontinuances is a novel question of state law and answering it is necessary to resolve this appeal. We therefore certify the following question to the New York Court of Appeals pursuant to 22 N.Y.C.C.R.R. § 500.27(a) and 2d Cir. R. 27.2(a): Whether Sections 4 and/or 8 of the Foreclosure Abuse Prevention Act, codified at N.Y. C.P.L.R. 203(h) and 3217(e), respectively, apply to a unilateral voluntary discontinuance taken prior to the Act's enactment.

## BACKGROUND

In 2006, Sean and Patricia Dros obtained a mortgage loan to purchase a condominium and parking space in Queens, New York (together, "the Property"). By 2010, the Droses had defaulted on the mortgage, and in July 2010 the mortgagee—GMAC Mortgage, LLC—commenced a foreclosure action. The Droses did not appear in the action and in May 2011 GMAC voluntarily discontinued it. In November 2011, GMAC brought a second foreclosure action. The Droses did not appear in this action either. In 2015, the mortgage was assigned to U.S. Bank. In February 2016, GMAC voluntarily discontinued the 2011 action. In July 2016, U.S. Bank commenced a third foreclosure action. In April 2022, the state court granted U.S.

4

Bank's motion to issue an amended judgment of foreclosure and sale against the Property. The foreclosure sale "has not yet occurred due to the pending appeal in this action." Appellant's Br. 6.

In 2016, East Fork purchased the Property through a judicial sale ordered in a separate foreclosure action that the board of managers of the Droses' condominium association brought pursuant to a lien for unpaid common charges. In 2020, East Fork filed this quiet title action against U.S. Bank seeking to cancel and discharge the mortgage on the ground that the mortgage's Schedule A describes a different property than the Property against which it was recorded and therefore is not a valid encumbrance on the Property. The parties filed cross-motions for summary judgment.

On December 30, 2022, while the summary judgment motions were still pending, the New York State legislature enacted FAPA. FAPA provides that "the voluntary discontinuance of [an action on a mortgage] … shall not … reset the limitations period to commence an action." FAPA § 8 (codified at N.Y. C.P.L.R. 3217(e)). The parties then filed supplemental briefing on the question of whether FAPA would time-bar any future foreclosure action because, under FAPA, the voluntary discontinuances of the 2010 and 2011 actions did not reset the statute of limitations to foreclose on the mortgage.

On March 23, 2023, the district court granted East Fork's motion for summary judgment and denied U.S. Bank's motion. The district court held, first, that FAPA applies retroactively to the prior voluntary discontinuances so that those discontinuances did not reset the statute of limitations. Thus, the statute of limitations began running with the filing of the 2010 action, was not reset by the 2011 and 2016 voluntarily discontinuances, and so ran out before East Fork commenced this quiet title action. Second, it held that retroactive

application of FAPA does not violate the Contracts Clause of the U.S. Constitution. Third, it held that even if FAPA did *not* apply to the prior discontinuances, the statute of limitations had still expired because the 2011 and 2016 discontinuances did not reset the statute of limitations even under pre-FAPA law.

## DISCUSSION

Under New York law, a property owner may bring an action to cancel and discharge a mortgage encumbering its property after the "statute of limitation for the commencement of an action to foreclose [the] mortgage … has expired." N.Y. Real Prop. Acts. Law § 1501(4). The statute of limitations for a mortgage foreclosure action is six years. N.Y. C.P.L.R. 213(4). "For a mortgage payable in installments, 'separate causes of action accrue for each installment that is not paid, and the statute of limitations begins to run, on the date each installment becomes due.'" *53rd St., LLC v. U.S. Bank, N.A.*, 8 F.4th 74, 78 (2d Cir. 2021) (alteration omitted) (quoting *Wells Fargo Bank, N.A. v. Burke*, 943 N.Y.S.2d 540, 542 (2d Dep't 2012)). However, once a mortgage debt is accelerated—such as by commencement of a foreclosure action—"the entire amount is due and the Statute of Limitations begins to run on the entire debt." *Id.* (quoting *Ditmid Holdings, LLC v. JPMorgan Chase Bank, N.A.*, 120 N.Y.S.3d 393, 394 (2d Dep't 2020)).

In certain circumstances, parties to a mortgage may deaccelerate a previously accelerated mortgage loan and thereby reset the statute of limitations. *See* N.Y. Gen. Oblig. Law § 17-105. But whether a mortgagee's unilateral deacceleration—such as by a voluntary discontinuance of a foreclosure action—resets the limitations period has been subject to debate. In 2021, the New York Court of Appeals held that when a bank accelerates a loan "via the

6

commencement of a foreclosure action, a voluntary discontinuance of that action … constitutes a revocation of that acceleration" that resets the statute of limitations. *Freedom Mortg. Corp. v. Engel*, 37 N.Y.3d 1, 31 (2021). The question was one of first impression for the New York Court of Appeals, but *Engel* concluded that a noteholder may "revoke an election to accelerate … by an 'affirmative act' of the noteholder within six years of the election to accelerate." *Id.* at 28-29.

In 2022, the New York State legislature enacted FAPA in part to overrule this holding of *Engel*. FAPA has ten sections, of which three are relevant here. Section 4 provides that "[o]nce a cause of action upon [a mortgage] has accrued, no party may … effect a unilateral extension of the limitations period." FAPA § 4 (codified at N.Y. C.P.L.R. 203(h)). Section 8 provides that "the voluntary discontinuance of [an action on a mortgage] … shall not … reset the limitations period to commence an action." FAPA § 8 (codified at N.Y. C.P.L.R. 3217(e)). Section 10 provides that "[t]his act shall take effect immediately and shall apply to all actions commenced on [a mortgage] in which a final judgment of foreclosure and sale has not been enforced." FAPA § 10 (2022 N.Y. Laws, Ch. 821, § 10).

**I**

The parties' arguments on appeal turn mainly on whether the voluntary discontinuances of the 2010 and 2011 actions—in 2011 and 2016, respectively—reset the limitations clock. If FAPA applies retroactively to those actions, then the voluntary discontinuances did not reset the clock and East Fork could be entitled to quiet title. If FAPA does not apply retroactively to that extent, then the voluntary discontinuances would have reset the clock assuming the discontinuances were properly executed under *Engel*.

U.S. Bank argues as follows. First, FAPA as a matter of statutory interpretation does not apply retroactively to a voluntary discontinuance that occurred prior to FAPA's enactment. Second, such a retroactive application of FAPA would violate the Contracts Clause, the Takings Clause, and the Due Process Clause of the U.S. Constitution. Third, if FAPA does not apply then the statute of limitations for bringing a foreclosure action has not run out because the 2010 and 2011 actions were properly discontinued under *Engel*.

East Fork responds with several points of its own. First, FAPA as a matter of statutory interpretation does apply retroactively to voluntary discontinuances occurring before its enactment. Second, retroactive application of FAPA would not be unconstitutional. Third, if FAPA does not apply then the statute of limitations has run out because the 2010 and 2011 actions were not properly discontinued under *Engel*. Additionally, East Fork contends that it is entitled to quiet title even if the statute of limitations has not run out because the mortgage is not a valid encumbrance on the Property, that U.S. Bank is estopped from arguing otherwise, and that the 2022 amended judgment of foreclosure and sale is not binding on East Fork due to jurisdictional and other defects.

Answering the question of whether and to what extent FAPA applies retroactively to voluntary discontinuances is necessary to resolve this appeal and is one of first impression for the New York Court of Appeals. We therefore certify the following question to the New York Court of Appeals:

> Whether Sections 4 and/or 8 of the Foreclosure Abuse Prevention Act, codified at N.Y. C.P.L.R. 203(h) and 3217(e), respectively, apply to a unilateral voluntary discontinuance taken prior to the Act's enactment.

8

## II

We next review the parties' statutory interpretation arguments and explain why certification is appropriate in this case. The parties dispute whether FAPA, as a matter of statutory interpretation, applies retroactively to voluntary discontinuances that occurred before FAPA was enacted.

## A

U.S. Bank argues that FAPA's text does not overcome the longstanding presumption against the retroactive application of statutes and that FAPA should not be applied "retroactively to a voluntary discontinuance that occurred … before FAPA was enacted" in light of the constitutional concerns that such a retroactive application would raise. Appellant's Br. 27.

First, U.S. Bank invokes the "deeply rooted" presumption against retroactive legislation. *Landgraf v. USI Film Prods.*, 511 U.S. 244, 265 (1994); *see Jacobus v. Colgate*, 217 N.Y. 235, 240 (1916) (Cardozo, J.) ("It takes a clear expression of the legislative purpose to justify a retroactive application."); *In re Gleason (Michael Vee, Ltd.)*, 96 N.Y.2d 117, 122 (2001) ("Amendments are presumed to have prospective application unless the Legislature's preference for retroactivity is explicitly stated or clearly indicated.").

Second, U.S. Bank contends that FAPA's text does not overcome this presumption. It points out that Sections 8 and 10 are "framed in future words, such as 'shall' or 'hereafter,'" which are "construed as prospective only." *Kuryak v. Adamczyk*, 705 N.Y.S.2d 739, 740 (4th Dep't 1999) (quoting N.Y. Stat. Law § 51, comment (McKinney 2024)); *see also Landgraf*, 511 U.S. at 288 (Scalia, J., concurring in the judgments) ("'Shall take effect upon enactment,' is presumed to mean 'shall have prospective effect upon enactment.'")

(alteration omitted). Section 8 provides that a voluntary discontinuance "*shall* not … reset the limitations period." FAPA § 8 (codified at N.Y. C.P.L.R. 3217(e)) (emphasis added). Likewise, Section 10 provides that FAPA "*shall* take effect immediately and *shall* apply to all actions commenced on [a mortgage] in which a final judgment of foreclosure and sale has not been enforced." FAPA § 10 (2022 N.Y. Laws, Ch. 821, § 10) (emphasis added). U.S. Bank observes that Section 4 similarly uses the future tense in providing that "no party *may* … effect a unilateral extension of the limitations period." FAPA § 4 (codified at N.Y. C.P.L.R. 203(h)) (emphasis added).

U.S. Bank further notes that FAPA uses the term "prior action" in some sections to explain the effect that a pre-FAPA action has on a present action, but the statute does not use that term in Section 4 or Section 8. For example, Section 7 provides that a mortgagee in an existing action is estopped from arguing that a "prior action" was not validly accelerated. FAPA § 7 (codified at N.Y. C.P.L.R. 213(4)(a)-(b)). U.S. Bank argues that FAPA's use of the term "prior action" in some sections but not in Sections 4 and 8 indicates that Sections 4 and 8 do not apply to an action discontinued before FAPA's enactment.[1]

Third, U.S. Bank urges us to interpret the statute prospectively so "as to avoid doubtful constitutional questions." *Arizona v. United States*, 567 U.S. 387, 415 (2012); *see People v. Viviani*, 36 N.Y.3d 564, 579 (2021) ("[A] statute should be construed, whenever possible, in a way that avoids placing its constitutionality in doubt.").

---

[1] The Attorney General responds that Section 8 applies to the voluntary discontinuance of a prior action despite the lack of a specific reference to "prior actions" because it expressly applies to "the voluntary discontinuance" of "*any* action." FAPA § 8 (codified at N.Y. C.P.L.R. 3217(e)) (emphasis added).

**B**

East Fork counters that, under New York law governing the retroactive application of statutes, FAPA applies to prior voluntary discontinuances. "In determining whether a statute should be given retroactive effect," New York courts "have recognized two axioms of statutory interpretation": (1) "[a]mendments are presumed to have prospective application unless the Legislature's preference for retroactivity is explicitly stated or clearly indicated," and (2) "remedial legislation should be given retroactive effect in order to effectuate its beneficial purpose." *Gleason*, 96 N.Y.2d at 122; *see also Regina Metro. Co. v. New York State Div. of Hous. & Cmty. Renewal*, 35 N.Y.3d 332, 370 (2020). New York courts also consider "whether the Legislature has made a specific pronouncement about retroactive effect or conveyed a sense of urgency; whether the statute was designed to rewrite an unintended judicial interpretation; and whether the enactment itself reaffirms a legislative judgment about what the law in question should be." *Gleason*, 96 N.Y.2d at 122.

East Fork contends that both axioms apply here. First, FAPA's text and legislative history show that the legislature intended for the statute to apply retroactively. Section 10 states that FAPA "shall apply to all actions … in which a final judgment of foreclosure and sale has not been enforced." FAPA § 10 (2022 N.Y. Laws, Ch. 821, § 10). And the legislators' statements likewise indicate that FAPA was intended to apply to all pending actions. *See* Special App'x 19 (Committee Report) ("Section 10 … makes it clear that [FAPA] … will apply to all such actions commenced where a final judgment of foreclosure and sale has not been enforced."); Add. 38-39 (Senate Debate Tr.) (statement of Senator Brian P. Kavanagh) ("[I]f … an action has been commenced and is pending at the time this bill comes into effect, then [FAPA] would apply. But if an action has been concluded,

11

presumably it would not apply to that action."). Moreover, the sponsor of FAPA in the State Assembly explained that the legislation was designed to have "retroactive effect" in accordance "with the recent Court of Appeals precedent in the *Regina* and *Gleason* cases." Add. 33 (Assembly Debate Tr.) (statement of Assembly Member Helene E. Weinstein).

Second, FAPA is remedial legislation because it was enacted to correct how the "law stood at the making of the act." *Am. Hist. Soc'y v. Glenn*, 248 N.Y. 445, 451 (1928) (quoting 1 William Blackstone, Commentaries *87); *see also* N.Y. Stat. Law § 54, comment (McKinney 2024) ("[R]emedial statutes are those designed to correct imperfections in the prior law."). The sponsoring assembly member explained that FAPA is "remedial legislation" that was intended to

> restore the law concerning statutes of limitations in mortgage foreclosures cases to where it was before the *Engel* decision … so that foreclosing financial institutions are not excused from longstanding statute of limitations principles at the expense of New York's struggling homeowners. … The bill … was specifically designed to solve the problem created by court decisions which veered from our original legislative intent to create a narrow and focused foreclosure remedy for mortgage lenders and not allow unlimited bites of the foreclosure apple.

Add. 33 (Assembly Debate Tr.) (statement of Assembly Member Helene E. Weinstein); *see also* Add. 22, 30 (Senate Introducer's Mem.) (stating that Sections 4 and 8 were intended to "overrule *Engel*").

East Fork argues that the other *Gleason* factors also indicate that FAPA applies retroactively. The legislature conveyed a sense of urgency by acting quickly to overturn *Engel* after that decision was

12

issued and by directing that the act take effect immediately. The legislature did not regard FAPA as establishing a new legal requirement but as "clarify[ing] the meaning of existing statutes" and "restor[ing] longstanding law that made it clear that a lenders' discontinuance of a foreclosure action that accelerated a mortgage loan does not serve to reset the statute of limitations." Special App'x 18-19 (Committee Report); *see also* Add. 16 (Senate Introducer's Mem.) ("[T]he purpose of the present remedial legislation is to clarify the meaning of existing statutes, codify correct judicial applications thereof, and rectify erroneous judicial interpretations thereof.").

Third, East Fork contends that retroactive application would be "sensible and equitable" because—in East Fork's view—the case law before *Engel* held that a voluntary discontinuance does not deaccelerate a loan and reset the statute of limitations. Appellee's Br. 32 (citing cases that predate *Engel*).

## C

We have discretion to certify a question to the New York Court of Appeals "[w]henever it appears … that determinative questions of New York law are involved in a case pending before [our] court for which no controlling precedent of the Court of Appeals exists." 22 N.Y.C.C.R.R. § 500.27(a); *see* 2d Cir. R. 27.2(a) ("If state law permits, the court may certify a question of state law to that state's highest court."). When we do so, we retain jurisdiction over the appeal "pending the state court's response to the certified question." 2d Cir. R. 27.2(a).[2]

---

[2] We may certify a question even when the parties have not requested it. *Beck Chevrolet Co. v. Gen. Motors LLC*, 787 F.3d 663, 681-82 (2d Cir. 2015). In any event, the Attorney General, as Intervenor, suggested that we certify

"We resort to certification sparingly." *Highland Cap. Mgmt. LP v. Schneider*, 460 F.3d 308, 316 (2d Cir. 2006). On the one hand, it is "our job to predict how the forum state's highest court would decide the issues before us," at least when "sufficient precedents exist for us to make this determination." *Khan v. Yale Univ.*, 27 F.4th 805, 831 (2d Cir. 2022) (quoting *DiBella v. Hopkins*, 403 F.3d 102, 111 (2d Cir. 2005)). On the other hand, the "certification of novel or unsettled questions of state law for authoritative answers by a State's highest court … may save time, energy, and resources and help build a cooperative judicial federalism." *Arizonans*, 520 U.S. at 77 (internal quotation marks and alteration omitted). "[B]asic principles of federalism" suggest that "the controlling interpretation of the relevant statute be given by state, rather than federal, courts" because "a federal court 'risks friction-generating error when it endeavors to construe a novel state Act not yet reviewed by the State's highest court.'" *Serio*, 261 F.3d at 150 (quoting *Arizonans*, 520 U.S. at 79).

In light of these considerations, our decision to certify a question is discretionary:

> [W]hen exercising that discretion we consider whether: (1) "the New York Court of Appeals has not squarely addressed an issue and other decisions by New York courts are insufficient to predict how the Court of Appeals would resolve it"; (2) "the statute's plain language does not indicate the answer"; (3) "a decision on the merits requires value judgments and important public policy choices that the New York Court of

---

the question. *See* Intervenor's Br. 22 n.11. We have stated that "under these conditions, a certification request 'merits more respectful consideration.'" *Allstate Ins. Co. v. Serio*, 261 F.3d 143, 154 (2d Cir. 2001) (alteration omitted) (quoting *Arizonans for Off. Eng. v. Arizona*, 520 U.S. 43, 78 (1997)).

> Appeals is better situated than we to make"; and (4) "the
> questions certified will control the outcome of the case."

*CIT Bank N.A. v. Schiffman*, 948 F.3d 529, 537 (2d Cir. 2020) (quoting *Penguin Grp. (USA) Inc. v. Am. Buddha*, 609 F.3d 30, 42 (2d Cir. 2010)). These factors favor certification in this case.

First, the New York Court of Appeals has not addressed FAPA's retroactive scope, and the rulings of the intermediate appellate courts are insufficient to predict how the Court of Appeals would decide the issue. "Although we are not strictly bound by state intermediate appellate courts, rulings from such courts are a basis for ascertaining state law which is not to be disregarded by a federal court unless it is convinced by other persuasive data that the highest court of the state would decide otherwise." *DiBella*, 403 F.3d at 112 (internal quotation marks omitted). For example, "we are unlikely to rely on lower state court decisions if they appear to conflict with a ruling of the state's highest court, the courts are divided on the issue, or we are convinced by other persuasive data that the highest court of the state would decide otherwise." *AEI Life LLC v. Lincoln Benefit Life Co.*, 892 F.3d 126, 139 n.15 (2d Cir. 2018) (internal quotation marks omitted). In this case, the decisions of the Appellate Division are not sufficient to determine how the Court of Appeals would rule. The Second Department has applied FAPA retroactively to voluntary discontinuances that occurred prior to FAPA's enactment. *See, e.g.*, *GMAT Legal Title Tr. 2014-1 v. Kator*, 184 N.Y.S.3d 805, 807 (2d Dep't 2023); *MTGLQ Invs., L.P. v. Singh*, 216 A.D.3d 1087, 1088 (2d Dep't 2023).[3] But some New York courts have declined to follow those

---

[3] The First Department has held that some of FAPA's provisions apply retroactively and suggested that the entire statute does too, but it has not addressed Sections 4 and 8. *See U.S. Bank N.A. v. Fox*, 216 A.D.3d 445, 446-

decisions on the ground that the Second Department gave "FAPA's provisions retroactive effect without so much as mentioning the issue of 'retroactivity' or conducting the analysis required by [*Regina Metropolitan*] to determine whether the legislation is to be retroactively applied." *U.S. Bank N.A. v. Speller*, 197 N.Y.S.3d 925, 2023 WL 7174591, at *16 n.4 (N.Y. Sup. Ct. 2023). Indeed, trial courts even within the Second Department continue to disagree on the issue of retroactivity. *See, e.g.*, *U.S. Bank Tr. N.A. v. Joerger*, 214 N.Y.S.3d 876, 885 (N.Y. Sup. Ct. 2024) ("[I]t is clear that FAPA and its amendments are to be applied prospectively."); *U.S. Bank, N.A. v. Nicholson*, 208 N.Y.S.3d 853, 2024 WL 1903298, at *7 (N.Y. Sup. Ct. 2024) ("[T]his Court holds that both sections 6 and 8 of FAPA … apply retroactively.").

Second, the statute's plain language does not dictate the answer. Even if FAPA applies retroactively to all pending actions involving mortgage contracts signed before the statute's enactment, it is not clear whether it must also apply to a noteholder's voluntary dismissal—taken before FAPA's enactment—of a foreclosure action that itself is no longer pending.

---

47 (1st Dep't 2023) (applying FAPA § 6 retroactively); *Genovese v. Nationstar Mortg. LLC*, 223 A.D.3d 37, 45 (1st Dep't 2023) (concluding that "FAPA applies retroactively" and applying FAPA § 7 retroactively). The trial courts in the Third Department have disagreed on whether Section 8 applies retroactively. *See, e.g.*, *Newrez LLC v. Kalina*, 185 N.Y.S.3d 651, 2023 WL 2721698, at *2 (N.Y. Sup. Ct. 2023) (holding that FAPA § 8 does not apply to prior voluntary discontinuances because "there is no indication that the legislative intent was to impair already vested rights"); *Ditech Fin. LLC v. Temple*, 201 N.Y.S.3d 920, 2024 WL 105732, at *4 (N.Y. Sup. Ct. 2024) (holding that "FAPA was intended to have retroactive effect" and applying FAPA § 8 to a prior voluntary discontinuance).

Third, FAPA's interpretation has implications for the New York mortgage market, New York property owners, and New York state law governing retroactive application of statutes.[4] To the extent that the statutory interpretation question implicates state public policy choices, the New York Court of Appeals is better situated to answer it.

Fourth, answering the certified question is necessary to resolve this appeal. We note that it does not resolve the case entirely. If the Court of Appeals were to hold that FAPA does apply retroactively to prior voluntary discontinuances, we would then consider whether such retroactive application is constitutional. If the Court of Appeals were to hold that FAPA does not apply retroactively in that way, we would then consider East Fork's arguments that the voluntary discontinuances were invalid even under *Engel* and that it is entitled to quiet title even if a foreclosure action is not time-barred. Either way, however, the retroactivity question must be decided and it will determine how the appeal will be resolved.

Finally, certification is particularly appropriate here for two additional reasons. Several New York courts have already addressed the question of FAPA's retroactivity, and we expect that the Court of Appeals will eventually render a decision on the issue. Moreover, FAPA "is susceptible of an interpretation that would eliminate the constitutional issue" in this case. *Tunick v. Safir*, 209 F.3d 67, 75 (2d Cir. 2000) (internal quotation marks omitted). "Normally this Court ought not to consider the Constitutionality of a state statute in the absence of a controlling interpretation of its meaning and effect by the state

---

[4] *See* Brief of Amici Curiae New York Bankers Ass'n et al. in Support of Defendant-Appellant at 18-22; Brief of Amicus Curiae United Jewish Organizations of Williamsburg, Inc. in Support of Plaintiff-Appellee at 4-8.

courts." *Nicholson v. Scoppetta*, 344 F.3d 154, 167 (2d Cir. 2003) (quoting *Arizonans*, 520 U.S. at 75). Accordingly, we seek such a controlling interpretation here.

## CONCLUSION

We certify the following question to the New York Court of Appeals:

> Whether Sections 4 and/or 8 of the Foreclosure Abuse Prevention Act, codified at N.Y. C.P.L.R. 203(h) and 3217(e), respectively, apply to a unilateral voluntary discontinuance taken prior to the Act's enactment.

The New York Court of Appeals may reformulate or expand on this question as it sees fit.

It is hereby ordered that the Clerk of this Court transmit to the Clerk of the New York Court of Appeals this opinion as our certificate, together with a complete set of briefs, appendices, and the record filed in this case by the parties. We retain jurisdiction to resolve this appeal after the New York Court of Appeals has responded to this certification.