

STATE OF NEW YORK
OFFICE OF THE ATTORNEY GENERAL

LETITIA JAMES
ATTORNEY GENERAL

BARBARA D. UNDERWOOD
SOLICITOR GENERAL
DIVISION OF APPEALS & OPINIONS

January 6, 2025

Catherine O'Hagan Wolfe
Clerk of Court
U.S. Court of Appeals for the Second Circuit
40 Foley Square
New York, NY 10007

  Re: *East Fork Funding LLC v. U.S. Bank, N.A.*, No. 23-659

Dear Ms. Wolfe:

  Intervenor Office of the New York State Attorney General (OAG) writes to inform the Court of Appellate Division decisions concerning the Foreclosure Abuse Prevention Act (FAPA) issued after OAG's supplemental brief.

  <u>First Department</u>. In *Bank of New York Mellon v. Del Rio*, 2024 N.Y. Slip Op. 06293, Slip op. at 3-5 (1st Dep't Dec. 17, 2024), a unanimous panel of the First Department held that FAPA § 8 applies retroactively and that such application comports with due process, the Takings Clause, and the Contract Clause.

  <u>Second Department</u>. In *Deutsche Bank National Trust Co. v. Dagrin*, 2024 N.Y. Slip Op. 06623, Slip op. at 3-6 (2d Dep't Dec. 24, 2024), a unanimous panel of the Second Department concluded that FAPA § 8 applies retroactively, and that such application comports with due process, the Takings Clause, and the Contract Clause, and does not constitute a bill of attainder.

  In *97 Lyman Avenue LLC v. MTGLQ Investors, L.P.*, 2024 N.Y. Slip Op. 06611 (2d Dep't Dec. 24, 2024), a majority concluded that FAPA § 8 applies retroactively and comports with due process and the Contract Clause. Slip op. at 3-5. Justice Joseph J. Maltese dissented and stated that he would have found FAPA's retroactive application to violate the lender's due process and Contract Clause rights. *Id.* at 8-11. As the majority explained, however, FAPA merely

"codified the previously long-standing rule" barring lenders from resetting the statute of limitations by voluntarily discontinuing a foreclosure action, *id.* at 4, and therefore did not infringe any vested right. The dissent's concern that FAPA could be used by borrowers "to avoid the terms of the mortgage agreement," *id.* at 10, is a policy consideration best directed to the Legislature. Finally, the dissent identified no legal support for an implied contractual right to reset the statute of limitations.

  <u>Third Department</u>. In *Bank of New York Mellon v. Richards*, 2024 N.Y. Slip Op. 06265, Slip op. at 3 (3d Dep't Dec. 12, 2024), a unanimous panel of the Third Department held that FAPA § 6 applies retroactively and declined to reach the lender's constitutional challenge as unpreserved.

Respectfully submitted,

*/s/ Mark S. Grube*

Mark S. Grube
Senior Assistant Solicitor General
(212) 416-8028

Word count: 348

Encl.

FILED: APPELLATE DIVISION - 1ST DEPT 12/17/2024 10:01 AM

NYSCEF DOC. NO. 23

2023-03505

RECEIVED NYSCEF: 12/17/2024

# Supreme Court of the State of New York

## Appellate Division, First Judicial Department

Manzanet-Daniels, J.P., Webber, Moulton, Rodriguez, Rosado, JJ.

3262  BANK OF NEW YORK MELLON formerly known as   Index No. 36469/19
      THE BANK OF NEW YORK, etc.,                 Case No. 2023-03505
          Plaintiff-Appellant,

                  -against-

      ALFRED DEL RIO also known as
       ALFREDO DEL RIO, et al.,
            Defendants-Respondents.


      NEW YORK STATE OFFICE OF THE ATTORNEY
      GENERAL,
            Intervenor-Respondent,


      MORTGAGE ELECTRONIC REGISTRATION SYSTEMS
      INC., etc, et al.,
            Defendants.

_____

Akerman LLP, New York (Jordan M. Smith of counsel), for appellant.

Shiryak Bowman Anderson Gill & Kadochnikov LLP, Kew Gardens (Matthew J. Routh of counsel), for Alfred Del Rio and Olivia Del Rio, respondents.

Letitia James, Attorney General, New York (Mark S. Grube of counsel), for New York State Office of the Attorney General, respondent.

_____

Order, Supreme Court, Bronx County (Doris M. Gonzalez, J.), entered on or about June 28, 2023, which, to the extent appealed from as limited by the briefs, granted defendants' motion for summary judgment dismissing the complaint, unanimously affirmed, without costs.

Defendants are not judicially estopped from challenging plaintiff's foreclosure claim based on defendants having checked a box as part of a 2011 bankruptcy petition in which they stated that the real property plaintiff now seeks to foreclose upon will be "Surrendered." The statement did not clearly and unequivocally take a legal position so as to estop them from taking a different position following the commencement of this foreclosure action eight years later. Even if defendants did take a position during the bankruptcy proceeding that was contrary to their position in this action, the position in this action does not appear to have been "simply because [defendants'] interests have changed" (*Baje Realty Corp. v Cutler*, 32 AD3d 307, 310 [1st Dept 2006] [internal quotation marks omitted]), but, instead, due to the substantial passage of time, during which time plaintiff discontinued an earlier 2009 foreclosure action and did not commence this one until four years after the parties' 2015 stipulation of discontinuance.

Res judicata does not bar defendants' statute of limitations defense in this action. Nothing in the record indicates that the prior "action" – namely the 2011 bankruptcy proceeding – involved litigation of any cause of action here so as to trigger the doctrine (*see Parker v Blauvelt Volunteer Fire Co.*, 93 NY2d 343, 347 [1999]).

Plaintiff accelerated its loan via its amended complaint on October 23, 2009, when it identified the correct plaintiff, defendants, loan, mortgage, and mortgaged premises, and the complaint stated that "the plaintiff has elected and does hereby elect to declare the entire principal balance to be due and owing." Collectively, these constituted an unequivocal overt act accelerating the loan (*see Freedom Mtge. Corp. v Engel*, 37 NY3d 1, 22 [2021], *superseded by statute on other grounds; see also Wells Fargo Bank, N.A. v Yoo Mi Min*, 202 AD3d 645, 645 [1st Dept 2022]).

The parties' 2015 stipulation of discontinuance did not reset the statute of limitations. The stipulation was silent as to whether the parties reset the statute of limitations (*see* General Obligations Law § 17-105[1]), and the discontinuance itself did not reset the limitation period (CPLR 3217[e]).

Plaintiff's argument that the Foreclosure Abuse Prevention Act (L 2022, ch 821 [FAPA]), which amended CPLR 3217 to include subsection (e), was not intended to apply retroactively is unavailing (*see Bayview Loan Servicing, LLC v Dalal*, AD3d , 2024 NY Slip Op 05767 [1st Dept 2024]; *Genovese v Nationstar Mtge. LLC*, 223 AD3d 37, 44 [1st Dept 2023]). As this Court noted in *Genovese*, FAPA was "remedial," and the Legislature "evince[d] a sense of urgency" (223 AD37 at 45). This Court further noted that "FAPA was designed, in part, to rewrite unintended judicial interpretations" (*id.*). In addition, FAPA sought to "clarify and reaffirm the legislative intent of a wide spectrum of laws" that lenders had "manipulated and abused" (Senate Introducer's Mem in Support, Bill Jacket, L 2022, ch 821). The Senate Sponsor's Memo stated that CPLR 3217(e) "clarifies that . . . the mere voluntary dismissal or discontinuance of a foreclosure action" will not "revive[] or reset" the limitation period. In light of the Legislature's intent to provide an immediate corrective to "unintended judicial interpretations" and the Legislature's specific targeting of discontinuances, it would seem incongruous for the Legislature, in enacting CPLR 3217(e), to have allowed discontinuances that occurred before FAPA was enacted to be exempt from that subsection's reach.

Applying FAPA retroactively in this case does not violate due process. FAPA sought to prevent abusive foreclosure practices through the unilateral manipulation of the statute of limitations and preventing successive lawsuits (*see* Senate Introducer's

3

Mem in Support, Bill Jacket, L 2022, ch 821). The Legislature noted that, were the law to allow lenders to unilaterally reset the statute of limitations, many foreclosure cases could proceed ad infinitum (*id.*). It also found that "[n]o other civil plaintiff in this state is extended such unilateral and unfettered powers" (*id.*). Thus, the Legislature's purpose in enacting FAPA aligned with the purpose of statutes of limitations generally, which is to "giv[e] repose to human affairs" (*id.*). Collectively, these constitute a "legitimate legislative purpose" (*American Economy Ins. Co. v State of New York*, 30 NY3d 136, 157-158 [2017], *cert denied* 584 US 1013 [2018] [internal quotation marks omitted]). In addition, CPLR 3217(e), as is relevant here, provides that "the voluntary discontinuance" of a foreclosure action" "on . . . stipulation . . . shall not, in form or effect . . . revive or reset the limitations period" (CPLR 3217[e]). This directly addresses the Legislature's desire to prevent lenders and servicers from manipulating the limitation period through discontinuances. Thus, CPLR 3217(e) furthers the legitimate legislative purpose by rational means (*see American Economy Ins. Co.* at 157).

Applying FAPA retroactively here also would not undermine plaintiff's settled expectations. Even if plaintiff had a right to deaccelerate defendants' loan in 2015, the 2015 stipulation of discontinuance's silence concerning deceleration meant that plaintiff did not unequivocally take advantage of that right. In addition, since the Court of Appeals had never addressed the effect of a discontinuance on a loan accelerated by the filing of a complaint prior to its decision in *Freedom Mtge. Corp. v Engel* (37 NY3d 1), plaintiff could not rely on the discontinuance to effect a deacceleration (*id.* at 28), and instead "took [its] chances with [its] interpretation of the law" (*General Motors Corp. v Romein*, 503 US 181, 192 [1992]).

FAPA did not effect a "regulatory" taking because FAPA did not "permanently deprive[]" plaintiff's mortgage of all value (*Tahoe-Sierra Preserv. Council, Inc. v Tahoe Regional Planning Agency*, 535 US 302, 332 [2002]). To the extent that anything deprived plaintiff's mortgage of value, it was the six-year statute of limitations itself, which began to accrue in 2009 when plaintiff accelerated defendants' loan.

Applying FAPA here would also not violate the United States Constitution's Contract Clause, as plaintiff points to no contractual provision allowing it to de-accelerate its loan, let alone a provision allowing it to reset the statute of limitations.

THIS CONSTITUTES THE DECISION AND ORDER
OF THE SUPREME COURT, APPELLATE DIVISION, FIRST DEPARTMENT.

ENTERED: December 17, 2024

Susanna Molina Rojas
Clerk of the Court

5

# Supreme Court of the State of New York
# Appellate Division: Second Judicial Department

D76220
O/htr

_____AD3d_____                                    Argued - November 21, 2024

CHERYL E. CHAMBERS, J.P.
PAUL WOOTEN
LILLIAN WAN
LAURENCE L. LOVE, JJ.

─────────────────────────────────────

2022-06354                                         DECISION & ORDER
2023-05388

Deutsche Bank National Trust Company, etc.,
appellant, v Frantz Dagrin, et al., respondents,
et al., defendants.

(Index No. 703563/18)

─────────────────────────────────────

      McCarter & English, LLP, New York, NY (Adam M. Swanson and Jessie D. Bonaros of counsel), for appellant.

      David J. Broderick LLC, Forest Hills, NY, for respondents.

      In an action, inter alia, to foreclose a mortgage, the plaintiff appeals from (1) an order of the Supreme Court, Queens County (Tracy Catapano-Fox, J.), entered June 21, 2022, and (2) an order of the same court entered April 13, 2023. The order entered June 21, 2022, insofar as appealed from, denied those branches of the plaintiff's motion which were for summary judgment on the first cause of action insofar as asserted against the defendants Frantz Dagrin and Daniella Dagrin and for an order of reference. The order entered April 13, 2023, denied the plaintiff's motion for leave to reargue those branches of its prior motion which were for summary judgment on the first cause of action insofar as asserted against the defendants Frantz Dagrin and Daniella Dagrin and for an order of reference and granted those defendants' motion pursuant to CPLR 3211(a)(5) to dismiss the complaint insofar as asserted against them as time-barred.

      ORDERED that the order entered June 21, 2022, is affirmed insofar as appealed from; and it is further,

      ORDERED that the appeal from so much of the order entered April 13, 2023, as denied the plaintiff's motion for leave to reargue is dismissed, as no appeal lies from an order

December 24, 2024                                        Page 1.
DEUTSCHE BANK NATIONAL TRUST COMPANY v DAGRIN

denying reargument; and it is further,

ORDERED that the order entered April 13, 2023, is affirmed insofar as reviewed; and it is further,

ORDERED that one bill of costs is awarded to the defendants Frantz Dagrin and Daniella Dagrin.

In May 2006, the defendant Frantz Dagrin executed a note and a mortgage agreement encumbering certain real property located in Far Rockaway. The note and mortgage were then assigned to the plaintiff on March 21, 2008. On March 28, 2008, the plaintiff commenced an action against, among others, Frantz Dagrin and his wife, the defendant Daniella Dagrin, who co-owned the mortgaged premises with Frantz Dagrin (hereinafter together the defendants), to foreclose the mortgage (hereinafter the 2008 action). In the complaint in the 2008 action, the plaintiff elected to accelerate the entire mortgage debt. However, on June 3, 2013, the plaintiff moved to discontinue the 2008 action. In an order entered July 10, 2013, the Supreme Court granted the motion.

In February 2018, the plaintiff commenced this action against, among others, the defendants, inter alia, to foreclose the mortgage. Thereafter, the plaintiff moved, among other things, for summary judgment on the first cause of action, seeking to foreclose the mortgage, insofar as asserted against the defendants and for an order of reference. The defendants opposed the motion. By order entered June 21, 2022, the Supreme Court, inter alia, denied those branches of the plaintiff's motion on the ground that triable issues of fact existed with respect to the plaintiff's standing to commence this action.

Thereafter, in January 2023, the defendants moved pursuant to CPLR 3211(a)(5) to dismiss the complaint insofar as asserted against them as time-barred based upon the retroactive application of the Foreclosure Abuse Prevention Act (L 2022, ch 821, § 8 [eff Dec. 30, 2022]; hereinafter FAPA) to this action. The plaintiff opposed the motion contending, among other things, that FAPA should not be given retroactive effect and that doing so would violate, inter alia, the Due Process, Contract, and Bill of Attainder Clauses of the United States Constitution. In an order entered April 13, 2023, the Supreme Court, among other things, granted the defendants' motion. The plaintiff appeals from the order entered June 21, 2022, and the order entered April 13, 2023.

Contrary to the plaintiff's contentions, the Supreme Court properly considered and granted the defendants' motion pursuant to CPLR 3211(a)(5) to dismiss the complaint insofar as asserted against them as time-barred. An action to foreclose a mortgage is governed by a six-year statute of limitations (*see* CPLR 213[4]; *Lubonty v U.S. Bank N.A.*, 34 NY3d 250, 261; *MTGLQ Invs., L.P. v Singh*, 216 AD3d 1087, 1088). "[E]ven if a mortgage is payable in installments, once a mortgage debt is accelerated, the entire amount is due and the Statute of Limitations begins to run on the entire debt" (*BHMPW Funding, LLC v Lloyd-Lewis*, 194 AD3d 780, 782 [internal quotation marks omitted]; *see GMAT Legal Title Trust 2014-1 v Kator*, 213 AD3d 915, 916). "Acceleration occurs, inter alia, by the commencement of a foreclosure action wherein the [holder of the note] elects in the complaint to call due the entire amount secured by the mortgage" (*GMAT Legal Title Trust 2014-1 v Kator*, 213 AD3d at 916).

In *Freedom Mtge. Corp. v Engel* (37 NY3d 1, 32), the Court of Appeals held that "where acceleration occurred by virtue of the filing of a complaint in a foreclosure action, the noteholder's voluntary discontinuance of that action constitutes an affirmative act of revocation of that acceleration as a matter of law, absent an express, contemporaneous statement to the contrary by the noteholder," thereby resetting the limitations period. However, FAPA, which was enacted after this action was commenced, effectively nullified *Engel*. Specifically, FAPA amended CPLR 3217, governing the voluntary discontinuance of an action, by adding a new subdivision (e), which provides that "[i]n any action on an instrument described under [CPLR 213(4)], the voluntary discontinuance of such action, whether on motion, order, stipulation or by notice, shall not, in form or effect, waive, postpone, cancel, toll, extend, revive or reset the limitations period to commence an action and to interpose a claim, unless expressly prescribed by statute."

Applying FAPA here, the voluntary discontinuance of the 2008 action did not serve to de-accelerate the mortgage debt, or revive, or reset the statute of limitations (*see id.* § 3217[e]; *Maneri v Residential Funding Co, LLC*, 227 AD3d 796; *Sarkar v Deutsche Bank Trust Co. Ams.*, 225 AD3d 641, 643; *US Bank N.A. v Medianik*, 223 AD3d 935, 938). Therefore, as the plaintiff commenced this action in February 2018, more than six years after the mortgage debt was initially accelerated, this action was time-barred.

Contrary to the plaintiff's contention, the Legislature intended that FAPA be applied retroactively. "The general rule is that statutes are to be construed as prospective only. It takes a clear expression of the legislative purpose to justify a retroactive application" (*Jacobus v Colgate*, 217 NY 235, 240 [citation omitted]). Nevertheless, "it is another axiom of statutory interpretation, and an exception to the presumption against retroactive application, that 'remedial legislation should be given retroactive effect in order to effectuate its beneficial purpose'" (*Matter of Mia. S. [Michelle C.]*, 212 AD3d 17, 22, quoting *Matter of Gleason [Michael Vee, Ltd.]*, 96 NY2d 117, 122). However, "[c]lassifying a statute as 'remedial' does not automatically overcome the strong presumption of prospectivity" (*Majewski v Broadalbin-Perth Cent. School Dist.*, 91 NY2d 577, 584, quoting McKinney's Cons Laws of NY, Book 1, Statutes § 321). "Other factors in the retroactivity analysis include whether the Legislature has made a specific pronouncement about retroactive effect or conveyed a sense of urgency; whether the statute was designed to rewrite an unintended judicial interpretation; and whether the enactment itself reaffirms a legislative judgment about what the law in question should be" (*Matter of Gleason [Michael Vee, Ltd.]*, 96 NY2d at 122).

Here, the Legislature did not explicitly state that FAPA should be retroactively applied, although section 10 of FAPA expressly provides that "[t]his act shall take effect immediately" (L 2022, ch 821 § 10). However, section 10 of FAPA clearly and unambiguously states that the law "shall apply to all actions commenced on an instrument described under subdivision four of section two hundred thirteen of the civil practice law and rules in which a final judgment of foreclosure and sale has not been enforced" (*id.*). Moreover, as observed by the Appellate Division, First Department, in *Genovese v Nationstar Mtge. LLC* (223 AD3d 37, 45), "FAPA is remedial in nature (*see* Assembly Mem in Support, Bill Jacket, L 2022, ch 821 at 8-9; Senate Introducer's Mem in Support of 2022 NY Senate Bill S5473D at 1, 3-4; NY Assembly Debate on 2022 Assembly Bill A7737B, Mar. 23, 2022 at 9), and the 'take-effect-immediately' language and the statements in the legislative memoranda in support of FAPA evince a sense of

urgency (*see Matter of Gleason*, 96 NY2d at 122; *Brothers v Florence*, 95 NY2d [290,] 299). Additionally, FAPA was designed, in part, to rewrite unintended judicial interpretations, and to reaffirm legislative judgment about what certain laws relating to the application of the statute of limitations to mortgage foreclosure actions should be (*see* Assembly Mem in Support, Bill Jacket, L 2022, ch 821 at 8-9; Senate Introducer's Mem in Support of 2022 NY Senate Bill S5473D at 1, 3-4)." As such, "[u]ltimately, the Legislature's goal, expressed in the language of FAPA and its legislative history, was to see FAPA applied retroactively" (*Genovese v Nationstar Mtge. LLC*, 223 AD3d at 45; *see 97 Lyman Ave., LLC v MTGLQ Investors, L.P.*, _____ AD3d _____ [Appellate Division Docket No. 2023-06623; decided herewith]; *Wilmington Trust, N.A. v Farkas*, _____ AD3d _____, _____, 2024 NY Slip Op 05841, *1-2 [3d Dept]; *U.S. Bank v Lynch*, _____ AD3d _____, _____, 2024 NY Slip Op 05261, *1-2 [3d Dept]). Moreover, consistent with this analysis, this Court has repeatedly applied FAPA retroactively in instances where the parties did not raise any issues regarding the constitutionality of its retroactive application (*see e.g. Anglestone Real Estate Venture Partners Corp. v Bank of N.Y. Mellon*, 221 AD3d 943; *Aspen Props. Group, LLC v Preston*, 219 AD3d 1475; *Bank of N.Y. Mellon v Norton*, 219 AD3d 680).

Contrary to the plaintiff's contention, retroactive application of FAPA comports with due process. "It is well settled that '[l]egislative enactments are entitled to a strong presumption of constitutionality'" (*White v Cuomo*, 38 NY3d 209, 216, quoting *Dalton v Pataki*, 5 NY3d 243, 255 [internal quotation marks omitted]), and a party challenging the enactment's legitimacy must demonstrate its invalidity beyond a reasonable doubt (*see id.*). "To comport with the requirements of due process, retroactive application of a newly enacted provision must be supported by a legitimate legislative purpose furthered by rational means" (*Matter of Regina Metro. Co., LLC v New York State Div. of Hous. & Community Renewal*, 35 NY3d 332, 375 [internal quotation marks omitted]). "This standard is not exacting, and the challenged legislation will survive 'so long as it is rationally related to *any conceivable* legitimate State purpose'" (*U.S. Bank N. A. v Lynch*, _____ AD3d at _____, 2024 NY Slip Op 05261, *3, quoting *American Economy Ins. Co. v State of New York*, 30 NY3d 136, 158).

Here, in enacting FAPA, the Legislature acted to overrule case law, most notably *Engel*, "that would allow noteholders to abuse the foreclosure process by manipulating and extending the statute of limitations to the detriment of homeowners" (*U.S. Bank N.A. v Lynch*, _____ AD3d at _____, 2024 NY Slip Op 05261, *3; *see* Senate Mem in Support of 2022 NY Senate Bill S5473D, Bill Jacket, L 2022, ch 821). Moreover, "[t]o prevent unintended results, the Legislature enacted FAPA to clarify the judicial process through which noteholders could recover on a mortgage debt, while also protecting homeowners from having to defend multiple foreclosure actions for lengths of time that far exceed the applicable statutes of limitations" (*U.S. Bank N.A. v Lynch*, _____ AD3d at _____, 2024 NY Slip Op 05261, * 3; *see Wilmington Trust, N.A. v Farkas*, _____ AD3d at _____, 2024 NY Slip Op 05841, *2). Since these clarifications are rationally related to the legitimate legislative purpose of "thwart[ing] and eliminat[ing] abusive and unlawful litigation tactics" (Assembly Mem in Support, Bill Jacket, L 2022, ch 821), "retroactive application of FAPA to foreclosure actions where a final judgment has not been enforced does not violate plaintiff's due process rights" (*U.S. Bank N.A. v Lynch*, _____ AD3d at _____, 2024 NY Slip Op 05261, *3; *see American Economy Ins. Co. v State of New York*, 30 NY3d at 157-159).

December 24, 2024                                                                                   Page 4.
DEUTSCHE BANK NATIONAL TRUST COMPANY v DAGRIN

The plaintiff's contention that FAPA violates the Contract Clause of the United States Constitution is without merit. "The Contract[ ] Clause prohibits states from enacting '[l]aw[s] impairing the Obligation of Contracts'" (*Matter of Raynor v Landmark Chrysler*, 18 NY3d 48, 58, quoting US Const, art 1, § 10[1]). "The threshold inquiry is whether the state law has, in fact, operated as a substantial impairment of a contractual relationship" (*Energy Reserves Group, Inc. v Kansas Power & Light Co.*, 459 US 400, 411 [internal quotation marks omitted]). "This inquiry has three components: whether there is a contractual relationship, whether a change in law impairs that contractual relationship, and whether the impairment is substantial" (*General Motors Corp. v Romein*, 503 US 181, 186).

Here, the plaintiff notes that the mortgage agreement provides it with "those rights that Applicable Law gives to lenders who hold mortgages on real property" and "is governed by federal law and the law of New York State." The plaintiff also identifies New York decisional law that allows a mortgagee to unilaterally de-accelerate a mortgage loan absent a showing of substantial prejudice (*see Kilpatrick v Germania Life Ins. Co.*, 183 NY 163, 168; *Milone v US Bank N.A.*, 164 AD3d 145, 155; *Golden v Ramapo Improvement Corp.*, 78 AD2d 648, 650). Taking these provisions of the mortgage agreement together with this decisional law, the plaintiff contends that, prior to the enactment of FAPA, it possessed a contractual right to unilaterally de-accelerate the mortgage debt at issue. However, even assuming that these provisions of the mortgage agreement and New York's decisional law, taken together, granted the plaintiff such a contractual right, the plaintiff has failed to identify any contractual provision "that entitles it either to de-accelerate the loan *by discontinuing a foreclosure action* or to reset the statute of limitations once it has already expired" (*Wilmington Trust, N.A. v Farkas*, _____ AD3d at _____ , 2024 NY Slip Op 05841, *3 [emphasis added]). Notably, section 19 of the mortgage agreement, which is the only provision that appears to address de-acceleration, grants the *borrower* the right to have enforcement of the mortgage agreement stopped "[e]ven if Lender has required Immediate Payment in Full," provided that the borrower meets certain conditions. Additionally, at the time of the mortgage loan closing in 2006 and the commencement of the 2008 action, the issue of whether the voluntary discontinuance of an action, alone, constituted an affirmative act revoking an earlier acceleration of the mortgage debt had not yet been addressed by any of the Appellate Divisions of the Supreme Court or the Court of Appeals (*see Freedom Mtge. Corp. v Engel*, 37 NY3d at 28-30). Moreover, at the time that this action was commenced in 2018, the issue remained somewhat unsettled in this Court's jurisprudence (*compare Freedom Mtge. Corp. v Engel*, 163 AD3d 631, 633, *with NMNT Realty Corp. v Knoxville 2012 Trust*, 151 AD3d 1068, 1070). Therefore, FAPA, which overturned *Engel*'s holding to the contrary, could not be said to work a substantial impairment on the parties' contractual rights.

The plaintiff's contention that retroactive application of FAPA would amount to an unconstitutional taking is raised for the first time on appeal (*see Wells Fargo Bank v Islam*, 174 AD3d 670, 671-672). However, since the issue presents this Court with a pure question of law appearing on the face of the record that could not have been avoided if raised at the proper juncture, and the defendants have addressed the merits of this contention on appeal, this Court will address it (*see MTGLQ Invs., L.P. v Baksh*, 215 AD3d 666, 668).

The Takings Clause of the United States Constitution, which was made applicable to the states through the Fourteenth Amendment, "provides that 'private property' shall not 'be taken

for public use, without just compensation'" (*Phillips v Washington Legal Foundation*, 524 US 156, 164, quoting US Const Amend V). The New York State Constitution similarly provides that "[p]rivate property shall not be taken for public use without just compensation" (NY Const, art I, § 7[a]; *American Economy Ins. Co. v State of New York*, 30 NY3d at 155 [internal quotation marks omitted]). "The threshold step in any Takings Clause analysis is to determine whether a vested property interest has been identified" (*American Economy Ins. Co. v State of New York*, 30 NY3d at 155).

Here, the plaintiff has failed, as a threshold matter, to identify a vested property interest since a final judgment has not been entered in this action (*see Hodes v Axelrod*, 70 NY2d 364, 370). Since the plaintiff has not identified any vested property interest that has been impaired by FAPA, its Takings Clause contention must fail (*see American Economy Ins. Co. v State of New York*, 30 NY3d at 155). Additionally, as discussed above, contrary to the plaintiff's contention, FAPA did not take away any vested right from the plaintiff to de-accelerate the mortgage debt by voluntarily discontinuing an action to foreclose a mortgage (*see generally Phillips v Washington Legal Foundation*, 524 US at 163-164; *American Economy Ins. Co. v State of New York*, 30 NY3d at 155).

The plaintiff contends that retroactive application of FAPA violates the Bill of Attainder Clause of the United States Constitution. Article I, section 10 of the United States Constitution provides that "[n]o State shall . . . pass any Bill of Attainder" (US Const, art I, § 10[1]). This provision "prohibit[s] legislatures from singling out disfavored persons and meting out summary punishment for past conduct" (*Landgraf v USI Film Products*, 511 US 244, 266) and "was intended not as a narrow, technical (and therefore soon to be outmoded) prohibition, but rather as an implementation of the separation of powers, a general safeguard against legislative exercise of the judicial function, or more simply–trial by legislature" (*United States v Brown*, 381 US 437, 442). Essentially, then, a bill of attainder is "a law that legislatively determines guilt and inflicts punishment upon an identifiable individual without provision of the protections of a judicial trial" (*Selective Serv. System v Minnesota Public Interest Research Group*, 468 US 841, 846-847 [internal quotation marks omitted]).

"In deciding whether a statute inflicts forbidden punishment," the Supreme Court of the United States "ha[s] recognized three necessary inquiries: (1) whether the challenged statute falls within the historical meaning of legislative punishment; (2) whether the statute, 'viewed in terms of the type and severity of burdens imposed, reasonably can be said to further nonpunitive legislative purposes'; and (3) whether the legislative record 'evinces a congressional intent to punish'" (*id.* at 852, quoting *Nixon v Administrator of General Services*, 433 US 425, 475-476, 478).

Here, the plaintiff has failed to establish that FAPA constitutes an unconstitutional bill of attainder, since the plaintiff cannot establish that FAPA falls within the historical meaning of legislative punishment (*see Nixon v Administrator of General Services*, 433 US at 473-474), or that FAPA evinces a legislative intent to punish the plaintiff. Instead, as discussed above, FAPA furthers several nonpunitive legislative goals, including the prevention of unintended results, the clarification of the judicial process through which noteholders could recover on a mortgage debt, and the protection of homeowners from having to defend multiple foreclosure actions for lengths of time

that far exceed the applicable statutes of limitations (*see U.S. Bank N.A. v Lynch*, _____ AD3d _____, 2024 NY Slip Op 05261).

Accordingly, the Supreme Court properly granted the defendants' motion pursuant to CPLR 3211(a)(5) to dismiss the complaint insofar as asserted against them as time-barred and denied those branches of the plaintiff's motion which were for summary judgment on the first cause of action insofar as asserted against the defendants and for an order of reference.

CHAMBERS, J.P., WOOTEN, WAN and LOVE, JJ., concur.

ENTER:

Darrell M. Joseph
Clerk of the Court

December 24, 2024                                                    Page 7.
DEUTSCHE BANK NATIONAL TRUST COMPANY v DAGRIN

# Supreme Court of the State of New York
# Appellate Division: Second Judicial Department

D76143
Y/htr

_____AD3d_____

Submitted - October 15, 2024

JOSEPH J. MALTESE, J.P.
LARA J. GENOVESI
LILLIAN WAN
DONNA-MARIE E. GOLIA, JJ.

───────────────────────────────

2023-06623

DECISION & ORDER

97 Lyman Avenue, LLC, respondent, v
MTGLQ Investors, L.P., appellant, et al., defendants.

(Index No. 151798/19)

───────────────────────────────

Knuckles, Komosinski & Manfro, LLP, Elmsford, NY (Louis A. Levithan of counsel), for appellant.

Petroff Amshen LLP, Brooklyn, NY (Steven Amshen and James Tierney of counsel), for respondent.

In an action, inter alia, pursuant to RPAPL 1501(4) to cancel and discharge of record a mortgage, the defendant MTGLQ Investors, L.P., appeals from an order of the Supreme Court, Richmond County (Wayne M. Ozzi, J.), dated May 12, 2023. The order, insofar as appealed from, upon renewal, vacated an order of the same court dated August 16, 2022, granting that defendant's prior motion pursuant to CPLR 3211(a) to dismiss the complaint insofar as asserted against it and denying the plaintiff's prior cross-motion, in effect, for summary judgment on the complaint, and thereupon denied the prior motion, in effect, granted the prior cross-motion, and directed the cancellation and discharge of record the subject mortgage.

ORDERED that the order dated May 12, 2023, is affirmed insofar as appealed from, with costs.

In June 2007, nonparty Thomas Cush executed a consolidated note in the sum of $333,750 in favor of Countrywide Home Loans, Inc. The note was secured by a consolidated mortgage executed by Cush and nonparties Julianna Noftell and Thomas Noftell (hereinafter together the Noftells, and together with Cush, the borrowers) encumbering certain property located in Staten Island (hereinafter the subject property). The borrowers also entered into a consolidation, extension,

and modification agreement in favor of Countrywide Home Loans, Inc., which consolidated a number of prior mortgages into a single lien on the subject property.

In July 2010, nonparty BAC Home Loans Servicing, L.P. (hereinafter BAC), the predecessor in interest of the defendant MTGLQ Investors, L.P. (hereinafter MTGLQ), commenced an action against the borrowers, among others, to foreclose the mortgage, in which BAC elected to call due the entire outstanding balance of the mortgage, thereby accelerating the mortgage (hereinafter the 2010 foreclosure action). In March 2013, the 2010 foreclosure action was voluntarily discontinued by BAC. In June 2017, after a series of assignments, the mortgage was assigned to MTGLQ.

Thereafter, in November 2018, MTGLQ commenced an action against the Noftells, among others, to foreclose the mortgage (hereinafter the 2018 foreclosure action). In November 2018, the borrowers conveyed the subject property to the plaintiff, 97 Lyman Avenue, LLC (hereinafter 97 Lyman).

In February 2019, MTGLQ moved, in effect, for leave to enter a default judgment and for an order of reference. While MTGLQ's motion was pending, in May 2019, 97 Lyman moved pursuant to CPLR 1012(a)(2), (3), and 1013 for leave to intervene in the 2018 foreclosure action.

In an order dated June 24, 2019, the Supreme Court denied 97 Lyman's motion for leave to intervene in the 2018 foreclosure action. In a separate order, also dated June 24, 2019, the court granted MTGLQ's motion, in effect, for leave to enter a default judgment and for an order of reference, and appointed a referee to compute the amount due to MTGLQ. 97 Lyman appealed from both orders. This Court determined that the Supreme Court properly denied 97 Lyman's motion for leave to intervene in the 2018 foreclosure action and dismissed 97 Lyman's appeal from the order which granted MTGLQ's motion, in effect, for leave to enter a default judgment and for an order of reference for lack of aggrievement (*see MTGLQ Invs., L.P. v Noftell*, 204 AD3d 786, 786-787).

In July 2019, 97 Lyman commenced the instant action against MTGLQ, among others, inter alia, pursuant to RPAPL 1501(4) to cancel and discharge of record the mortgage. In April 2022, MTGLQ moved pursuant to CPLR 3211(a) to dismiss the complaint insofar as asserted against it. 97 Lyman opposed the motion and cross-moved, in effect, for summary judgment on the complaint. In an order dated August 16, 2022 (hereinafter the August 2022 order), the Supreme Court granted MTGLQ's motion and denied 97 Lyman's cross-motion.

In February 2023, 97 Lyman moved for leave to renew its opposition to MTGLQ's motion pursuant to CPLR 3211(a) to dismiss the complaint insofar as asserted against it and, in effect, its cross-motion, in effect, for summary judgment on the complaint based upon the enactment of the Foreclosure Abuse Prevention Act (hereinafter FAPA). MTGLQ opposed the motion, arguing, among other things, that the retroactive application of FAPA was an unconstitutional violation of its due process rights and violated the Contract Clause of the United States Constitution. In an order dated May 12, 2023, the Supreme Court granted leave to renew and, upon renewal, vacated the August 2022 order, and thereupon denied MTGLQ's motion and, in effect, granted 97 Lyman's cross-motion, and directed the cancellation and discharge of record the mortgage. The

court determined, in effect, that the retroactive application of FAPA was constitutional. MTGLQ appeals.[*]

The Supreme Court, upon renewal, properly denied MTGLQ's motion to dismiss the complaint insofar as asserted against it and properly, in effect, granted 97 Lyman's cross-motion, in effect, for summary judgment on the complaint, as the 2018 foreclosure action was untimely. An action to foreclose a mortgage is governed by a six-year statute of limitations (*see id.* § 213[4]). "'[E]ven if a mortgage is payable in installments, once a mortgage debt is accelerated, the entire amount is due and the Statute of Limitations begins to run on the entire debt'" (*U.S. Bank N.A. v Medianik*, 223 AD3d 935, 937, quoting *BHMPW Funding, LLC v Lloyd-Lewis*, 194 AD3d 780, 782; *see U.S. Bank NA v Schaer*, 223 AD3d 928, 929; *U.S. Bank Trust, N.A. v Reizes*, 222 AD3d 907, 909). "Acceleration occurs, inter alia, by the commencement of a foreclosure action wherein the holder of the note elects in the complaint to call due the entire amount secured by the mortgage" (*U.S. Bank NA v Schaer*, 223 AD3d at 929; *see GMAT Legal Title Trust 2014-1 v Kator*, 213 AD3d 915, 916). "Pursuant to RPAPL 1501(4), a person having an estate or interest in real property subject to a mortgage may maintain an action to secure the cancellation and discharge of the encumbrance, and to adjudge the estate or interest free of it, if the applicable statute of limitations for commencing a foreclosure action has expired" (*U.S. Bank N.A. v Medianik*, 223 AD3d at 938; *see U.S. Bank NA v Schaer*, 223 AD3d at 929).

In response to *Freedom Mtge. Corp. v Engel* (37 NY3d 1, 31), in which the Court of Appeals held that "when a bank effectuated an acceleration via the commencement of a foreclosure action, a voluntary discontinuance of that action—i.e., the withdrawal of the complaint—constitutes a revocation of that acceleration," the Legislature, in December 2022, enacted FAPA (L 2022, ch 821 [eff Dec. 30, 2022]). As relevant to this appeal, FAPA amended CPLR 3217(e) to provide that, "[i]n any action on an instrument described under [CPLR 213(4)], the voluntary discontinuance of such action, whether on motion, order, stipulation or by notice, shall not, in form or effect, waive, postpone, cancel, toll, extend, revive or reset the limitations period to commence an action and to interpose a claim, unless expressly prescribed by statute" (*see* L 2022, ch 821 § 8).

Applying FAPA here, the voluntary discontinuance of the 2010 foreclosure action by MTGLQ's predecessor in interest did not serve to de-accelerate the mortgage nor did it "revive or reset" the statute of limitations (CPLR 3217[e]; *see U.S. Bank NA v Schaer*, 223 AD3d at 929-930; *U.S. Bank Trust, N.A. v Reizes*, 222 AD3d at 909-910). Since MTGLQ commenced the 2018 foreclosure action more than six years after the initial acceleration of the mortgage, applying FAPA, the applicable statute of limitations for commencing a foreclosure action has expired (*see Anglestone Real Estate Venture Partners Corp. v Bank of N.Y. Mellon*, 221 AD3d 943, 947; *Aspen Props. Group, LLC v Preston*, 219 AD3d 1475, 1477).

Contrary to MTGLQ's contention, FAPA was intended to apply retroactively to cases

---

[*] On February 14, 2024, MTGLQ served the New York State Attorney General pursuant to Executive Law § 71 and CPLR 1012, and, by letter, the Attorney General declined to intervene in this instant appeal and stated that the Attorney General has previously intervened to defend the constitutionality of FAPA in other actions.

like this one. FAPA provides that it "shall take effect immediately and shall apply to all actions commenced on an instrument described under [CPLR 213(4)] in which a final judgment of foreclosure and sale has not been enforced" (L 2022, ch 821 § 10). In doing so, the Legislature evinced a sense of urgency in enacting FAPA, as indicated by the Sponsor Memorandum in Support, which provides that FAPA "is a response to the Court of Appeals recent holding in *Freedom Mtge. Corp. v Engel*," and that it "will restore longstanding law that made it clear that a lenders' discontinuance of a foreclosure action that accelerated a mortgage loan does not serve to reset the statute of limitations" (Assembly Mem in Support, Bill Jacket, L 2022, ch 821 at 9).

Indeed, while a lender may revoke the acceleration of a mortgage upon an affirmative act (*see Federal Natl. Mtge. Assn. v Schmitt*, 172 AD3d 1324, 1325; *Bank of N.Y. Mellon v Craig*, 169 AD3d 627, 629; *EMC Mtge. Corp. v Patella*, 279 AD2d 604, 606; *Federal Natl. Mtge. Assn. v Mebane*, 208 AD2d 892, 894), this Court had consistently held before *Freedom Mtge. Corp. v Engel*, that a voluntary discontinuance of a mortgage foreclosure action did not constitute an affirmative act of revocation of an accelerated mortgage (*see Christiana Trust v Barua*, 184 AD3d 140, 146-147; *HSBC Bank, N.A. v Vaswani*, 174 AD3d 514, 515; *Aquino v Ventures Trust 2013-I-H-R by MCM Capital Partners*, 172 AD3d 663, 664). Therefore, to the extent that our dissenting colleague finds that the retroactive application of FAPA disrupts any substantial rights pursuant to *Freedom Mtge. Corp. v Engel*, FAPA, in essence, codified the previously long-standing rule that a lender cannot revoke the acceleration of a mortgage and reset the statute of limitations by voluntarily discontinuing a mortgage foreclosure action (*see Bank of N.Y. Mellon v Yacoob*, 182 AD3d 566, 567-568; *HSBC Bank, N.A. v Vaswani*, 174 AD3d at 515; *U.S. Bank Trust, N.A. v Aorta*, 167 AD3d 807, 808-809). Thus, contrary to MTGLQ's contention, FAPA is remedial in nature and was intended to apply retroactively where, as here, a final judgment of foreclosure and sale has not been enforced (*see Bayview Loan Servicing, LLC v Dalal*, _____ AD3d _____, _____ 2024 NY Slip Op 05767, * 2 [1st Dept]; *Genovese v Nationstar Mtge. LLC*, 223 AD3d 37, 44; *Matter of Mia S. [Michelle C.]*, 212 AD3d 17, 22; *Nelson v HSBC Bank USA*, 87 AD3d 995, 997-998).

MTGLQ's contention that the retroactive application of FAPA violates the Due Process Clause of the United States Constitution is unpersuasive. "[T]he test of due process for retroactive legislation 'is met simply by showing that the retroactive application of the legislation is itself justified by a rational legislative purpose'" (*American Economy Ins. Co. v State of New York*, 30 NY3d 136, 158, quoting *Pension Benefit Guaranty Corporation v R.A. Gray & Co.*, 467 US 717, 730; *see Matter of Regina Metro Co., LLC v New York State Div. of Hous. & Community Renewal*, 35 NY3d 332, 375). We conclude, and our dissenting colleague agrees, that the legislative purpose of FAPA, "to thwart and eliminate abusive and unlawful litigation tactics" (Assembly Mem in Support, Bill Jacket, L 2022, ch 821 at 8), is a legitimate purpose. Accordingly, MTGLQ failed to establish that the retroactive application of FAPA violated its rights pursuant to the Due Process Clause (*see American Economy Ins. Co. v State of New York*, 30 NY3d at 158; *Wilmington Trust, N.A. v Farkas*, _____ AD3d _____, 2024 NY Slip Op 05841 [1st Dept]; *Bayview Loan Servicing, LLC v Dalal*, _____ AD3d _____, _____ , 2024 NY Slip Op 05767, * 2-3; *U.S. Bank N.A. v Lynch*, _____ AD3d _____ , _____ , 2024 NY Slip Op 05261, * 3 [3d Dept]).

Nor is MTGLQ's contention that the retroactive application of FAPA violates the Contract Clause of the United States Constitution availing (*see Matter of Raynor v Landmark*

*Chrysler*, 18 NY3d 48, 58; *Consumers Union of U.S., Inc. v State of New York*, 5 NY3d 327, 358-359; *Bayview Loan Servicing, LLC v Dalal*, _____ AD3d at _____, 2024 NY Slip Op 05767, * 3). Contrary to our dissenting colleague's position that MTGLQ or its predecessor in interest implicitly retained the right to revoke the acceleration, the explicit terms of the mortgage agreement did not grant MTGLQ or its predecessor in interest the right to revoke the acceleration of the mortgage (*see 159 MP Corp. v Redbridge Bedford, LLC*, 33 NY3d 353, 358; *cf. Milone v US Bank N.A.*, 164 AD3d 145, 155). Since the terms of the mortgage agreement are clear and unambiguous and did not grant MTGLQ or its predecessor in interest the right to revoke the acceleration, "'courts should be especially reluctant to interpret an agreement as impliedly stating something which the parties specifically did not include'" (*PSCW, Inc. v Monaco*, 216 AD3d 820, 822, quoting *Donohue v Cuomo*, 38 NY3d 1, 12; *see Loughlin v Meghji*, 186 AD3d 1633, 1639).

MTGLQ's contention that the retroactive application of FAPA violates the Takings Clause of the Fifth Amendment of the United States Constitution is improperly raised for the first time on appeal (*see Citibank, N.A. v Horan*, 230 AD3d 1216, 1219; *South Point, Inc. v John*, 230 AD3d 825, 827).

The parties' remaining contentions either need not be reached in light of our determination, have been rendered academic, or are improperly raised for the first time on appeal.

GENOVESI, WAN and GOLIA, JJ., concur.

MALTESE, J.P., dissents, and votes to reverse the order dated May 12, 2023, insofar as appealed from, on the law, and, upon renewal, to adhere to the determinations in the order dated August 16, 2022, granting the prior motion of the defendant MTGLQ Investors, L.P., pursuant to CPLR 3211(a) to dismiss the complaint insofar as asserted against it and denying the plaintiff's prior cross-motion, in effect, for summary judgment on the complaint, with the following memorandum:

In this appeal in a mortgage foreclosure action, the defendant MTGLQ Investors, L.P. (hereinafter MTGLQ), raises constitutional challenges to the retroactive application of certain provisions of the Foreclosure Abuse Prevention Act (L 2022, ch 821 [eff Dec. 30, 2022] [hereinafter FAPA]), which affect a lender's ability to revoke its acceleration of mortgage debt. I find that, as applied to the facts of this case, the retroactive application of FAPA violates the constitutional right to due process and the Contract Clause of the United States Constitution, and therefore FAPA may not be applied retroactively in this case.

I. Factual and Procedural Background

In June 2007, nonparty Thomas Cush executed and delivered to nonparty Countrywide Home Loans, Inc. (hereinafter Countrywide) a consolidated note in the sum of $333,750. The consolidated note was secured by a consolidated mortgage given by Cush and nonparties Julianna Noftell and Thomas Noftell (hereinafter together the Noftells, and, together with Cush, the borrowers) on certain real property located at 97 Lyman Avenue in Staten Island (hereinafter the subject property). On the same date, the borrowers entered into a consolidation, extension, and modification agreement in favor of Countrywide, which consolidated a number of

prior mortgages into a single lien on the subject property.

In 2010, nonparty BAC Home Loans Servicing, L.P. (hereinafter BAC), commenced an action against the borrowers, among others, to foreclose the consolidated mortgage, calling due the entire amount of the debt in the complaint, and alleging that the borrowers defaulted in making payments due on September 1, 2009, and thereafter (hereinafter the 2010 foreclosure action). In March 2013, BAC discontinued the 2010 foreclosure action "due to reinstatement" of the mortgage.

In June 2017, BAC's successor in interest assigned the consolidated mortgage to MTGLQ. In November 2018, MTGLQ commenced an action against the Noftells, among others, to foreclose the consolidated mortgage, that was reinstated in 2013, alleging that the Noftells defaulted in making payments due on January 1, 2011, and thereafter (hereinafter the 2018 foreclosure action). MTGLQ filed a notice of pendency at the time of commencement.

In November 2018, the Noftells, without the consent of the lender or successor lender MTGLQ and in violation of the mortgage agreement, transferred the subject property to the plaintiff, 97 Lyman Avenue, LLC (hereinafter 97 Lyman). MTGLQ moved, in effect, for leave to enter a default judgment and for an order of reference. 97 Lyman moved for leave to intervene in the 2018 foreclosure action. The Supreme Court granted MTGLQ's motion and, in a separate order, denied 97 Lyman's motion. This Court affirmed the order denying 97 Lyman's motion for leave to intervene and dismissed the appeal from the order granting MTGLQ's motion, in effect, for leave to enter a default judgment and for an order of reference (*see MTGLQ Invs., L.P. v Noftell*, 204 AD3d 786, 787).

Nonetheless, in July 2019, 97 Lyman commenced this action against MTGLQ, among others, inter alia, to cancel and discharge of record the consolidated mortgage. MTGLQ moved pursuant to CPLR 3211(a) to dismiss the complaint insofar as asserted against it. 97 Lyman cross-moved, in effect, for summary judgment on the complaint. In an order dated August 16, 2022, the Supreme Court granted MTGLQ's motion and denied 97 Lyman's cross-motion.

In 2023, 97 Lyman moved for leave to renew its opposition to MTGLQ's motion and, in effect, to renew its cross-motion, based on a change in the law due to the enactment of FAPA. In an order dated May 12, 2023, the Supreme Court granted leave to renew and, upon renewal, determined that the relevant FAPA provisions rendered the 2018 foreclosure action untimely. The court denied MTGLQ's motion to dismiss, in effect, granted 97 Lyman's cross-motion, in effect, for summary judgment on the complaint, and directed the cancellation and discharge of the consolidated mortgage. MTGLQ appeals.

Contrary to my colleagues in the majority, I find that the relevant provisions of FAPA are unconstitutional as applied to these facts and, therefore, the 2018 foreclosure action was not time-barred. Consequently, the Supreme Court, upon renewal, should have adhered to the determinations in the order dated August 16, 2022, granting MTGLQ's motion pursuant to CPLR 3211(a) to dismiss the complaint insofar as asserted against it and denying 97 Lyman's cross-motion, in effect, for summary judgment on the complaint.

II. <u>Analysis</u>

"Pursuant to RPAPL 1501(4), a person having an estate or interest in real property subject to a mortgage may maintain an action to secure the cancellation and discharge of the encumbrance, and to adjudge the estate or interest free of it, if the applicable statute of limitations for commencing a foreclosure action has expired" (*U.S. Bank N.A. v Mediank*, 223 AD3d 935, 938; *see Ditmid Holdings, LLC v JPMorgan Chase Bank, N.A.*, 180 AD3d 1002, 1003).

An action to foreclose a mortgage is governed by a six-year statute of limitations (*see* CPLR 213[4]). "'[E]ven if a mortgage is payable in installments, once a mortgage debt is accelerated, the entire amount is due and the Statute of Limitations begins to run on the entire debt'" (*U.S. Bank N.A. v Mediank*, 223 AD3d at 937, quoting *BHMPW Funding, LLC v Lloyd-Lewis*, 194 AD3d 780, 782). "'Acceleration occurs, inter alia, by the commencement of a foreclosure action wherein the [holder of the note] elects in the complaint to call due the entire amount secured by the mortgage'" (*id.*, quoting *GMAT Legal Title Trust 2014-1 v Kator*, 213 AD3d 915, 916).

In *Freedom Mtge. Corp. v Engel* (37 NY3d 1, 19), the Court of Appeals "[a]dopt[ed] a clear rule that will be easily understood by the parties and can be consistently applied by the courts." The Court held that "where the maturity of the debt has been validly accelerated by commencement of a foreclosure action, the noteholder's voluntary withdrawal of that action revokes the election to accelerate, absent the noteholder's contemporaneous statement to the contrary" (*id.*). The Court of Appeals noted that this issue "involve[s] the intersection of two areas of law where the need for clarity and consistency are at their zenith: contracts affecting real property ownership and the application of the statute of limitations" (*id.*).

In 2022, the Legislature enacted, and the Governor signed into law, FAPA. Among other things, FAPA amended CPLR 3217, governing the voluntary discontinuance of an action, by adding a new paragraph (e), which specifically affects mortgage foreclosure actions and provides that "[i]n any action on an instrument described under [CPLR 213(4)], the voluntary discontinuance of such action, whether on motion, order, stipulation or by notice, shall not, in form or effect, waive, postpone, cancel, toll, extend, revive or reset the limitations period to commence an action and to interpose a claim, unless expressly prescribed by statute." FAPA also amended CPLR 213(4) by adding, among other things, paragraph (a), which provides that "[i]n any action on an instrument described under this subdivision, if the statute of limitations is raised as a defense, and if that defense is based on a claim that the instrument at issue was accelerated prior to, or by way of commencement of a prior action, a plaintiff shall be estopped from asserting that the instrument was not validly accelerated, unless the prior action was dismissed based on an expressed judicial determination, made upon a timely interposed defense, that the instrument was not validly accelerated" (*see GMAT Legal Title Trust 2014-1 v Kator*, 213 AD3d at 916-917).

The Legislature's purpose in enacting FAPA was to "thwart and eliminate abusive and unlawful litigation tactics that have been adopted and pursued in mortgage foreclosure actions" and to prevent mortgage lenders and loan services from "manipulat[ing] statutes of limitation to their advantage" (Assembly Mem in Support, Bill Jacket, L 2022, ch 821 at 8). The Legislature provided

that FAPA "shall take effect immediately and shall apply to all actions commenced on an instrument described under [CPLR 213(4)] in which a final judgment of foreclosure and sale has not been enforced" (L 2022, ch 821, § 10). This Court has applied the provisions of FAPA retroactively in appeals where the parties did not raise arguments regarding FAPA's constitutionality (*see U.S. Bank N.A. v Caldwell*, 226 AD3d 1060; *HSBC Bank USA, N.A. v MD A. Islam*, 221 AD3d 672, 674). Until now, however, this Court has not addressed the issue of FAPA's constitutionality because, in other appeals where the parties raised such challenges on appeal, unlike here, the parties did not have the opportunity to do so before the Supreme Court because the orders appealed from predated the enactment of FAPA.

The Appellate Division, First and Third Departments, recently determined that the retroactive application of FAPA to foreclosure actions where a final judgment has not been enforced does not violate the right to due process (*see Bayview Loan Servicing, LLC v Dalal*, _____ AD3d _____, 2024 NY Slip Op 05767 [1st Dept]; *U.S. Bank N.A. v Lynch*, _____ AD3d _____, 2024 NY Slip Op 05261 [3d Dept]), and the First Department further held that the retroactive application of FAPA does not violate the Contract Clause of the United States Constitution (*see Bayview Loan Servicing, LLC v Dalal*, _____ AD3d _____, 2024 NY Slip Op 05767).

I respectfully disagree and find that, under the circumstances of this case, the retroactive application of CPLR 3217(e) and 213(4) violates both the constitutional right to due process and the Contract Clause of the United States Constitution as applied here.

Here, in support of its cross-motion, in effect, for summary judgment on the complaint, 97 Lyman demonstrated, prima facie, that the six-year statute of limitations began to run in July 2010, when BAC, MTGLQ's predecessor in interest, commenced the 2010 foreclosure action and elected in the complaint to call due the entire amount secured by the consolidated mortgage (*see U.S. Bank N.A. v Mediank*, 223 AD3d at 938; *see also U.S. Bank N.A. v Doura*, 204 AD3d 721, 723). 97 Lyman further demonstrated that the 2018 foreclosure action was commenced in October 2018, more than six years later (*see U.S. Bank N.A. v Mediank*, 223 AD3d at 938; *see also U.S. Bank N.A. v Doura*, 204 AD3d at 723). If CPLR 3217(e) and 203(h) were applied retroactively, the voluntary discontinuance of the 2010 foreclosure action would not serve to reset the statute of limitations, and 97 Lyman would be entitled to summary judgment on the complaint (*see U.S. Bank N.A. v Caldwell*, 226 AD3d 1060; *HSBC Bank USA, N.A. v MD A. Islam*, 221 AD3d at 674).

Due Process

"To comport with the requirements of due process, retroactive application of a newly enacted provision must be supported by a legitimate legislative purpose furthered by rational means" (*Matter of Regina Metro. Co., LLC v New York State Div. of Hous. & Community Renewal*, 35 NY3d 332, 375 [internal quotation marks omitted]). "[L]egislative direction concerning the scope of a statute carries a presumption of constitutionality, and the party challenging that direction bears the burden of showing the absence of a rational basis justifying retroactive application of the statute" (*id.*). Nevertheless, "retroactive legislation does have to meet a burden not faced by [purely prospective] legislation," which is satisfied when "the retroactive application of the legislation is itself justified by a rational legislative purpose" (*Pension Benefit Guaranty Corporation v R.A. Gray*

December 24, 2024 Page 8.
97 LYMAN AVENUE, LLC v MTGLQ INVESTORS, L.P.

*& Co.*, 467 US 717, 730). Because "[r]etroactive legislation presents problems of unfairness that are more serious than those posed by prospective legislation the justifications for [prospective legislation] may not suffice for the [retroactive aspects]" (*Matter of Regina Metro. Co., LLC v New York State Div. of Hous. &Community Renewal*, 35 NY3d at 375 [citation and internal quotation marks omitted]). "[I]n order to comport with due process, there must be a 'persuasive reason' for the 'potentially harsh' impacts of retroactivity" (*id.*, quoting *Holly S. Clarendon Trust v State Tax Commn.*, 43 NY2d 933, 935). "In determining whether retroactive application of a statute is supported by a rational basis, the relationship between the length of the retroactivity period and its purpose is critical" (*id.* at 376).

Here, the retroactivity period, applying to the discontinuance of a mortgage foreclosure action over a decade ago, is "vast" (*see id.* at 375; *James Sq. Assoc. LP v Mullen*, 21 NY3d 233). Moreover, retroactivity concerns are further heightened where, as here and as discussed further below, the new statutory provisions "affect[ ] contractual or property rights, matters in which predictability and stability are of prime importance" (*Matter of Regina Metro. Co., LLC v New York State Div. of Hous. & Community Renewal*, 35 NY3d at 382 [internal quotation marks omitted]).

Although the stated purpose of FAPA, "to thwart and eliminate abusive and unlawful litigation tactics" (Assembly Mem in Support, Bill Jacket, L 2022, ch 821 at 8), is a legitimate purpose, the retroactive application of CPLR 3217(e) and 203(h) is not a rational means by which to further that purpose in this case, as the facts of this case illustrate. During the pendency of the 2010 foreclosure action, the Supreme Court granted BAC's application to discontinue the foreclosure action and cancel the notice of pendency due to the reinstatement of the mortgage, and the action was dismissed on March 19, 2013. This occurred years before the six-year statute of limitations would have expired. The mortgagors were thereby given an opportunity to save their home by resuming payments on the mortgage note, which they apparently did, but once again stopped in January 2011 in violation of the mortgage contract. The mortgage was subsequently assigned to MTGLQ, which commenced a second mortgage foreclosure action against the Noftells, among others. Rather than answering the complaint and defending the foreclosure action, the Noftells transferred the deed to the subject property that was collateral for the mortgage loan to 97 Lyman, a limited liability company, while a notice of pendency was on file and contrary to paragraph 18 of the mortgage agreement, which permitted the mortgagee, MTGLQ, to seek payment in full if the borrowers transferred the property without the mortgagee's prior written permission. My colleagues in the majority do not address the fact that there is no indication in the record that MTGLQ ever gave consent to transfer title to its collateral without paying the balance of the loan.

Thus, rather than protect individual homeowners from manipulative practices by lenders, the retroactive application of FAPA in this case would enable borrowers to abuse the foreclosure process and would discourage plaintiff-lenders from discontinuing mortgage foreclosure actions and de-accelerating loans to permit borrowers to resume making mortgage payments and thereby saving their homes from foreclosure. Retroactive application here "simply punishe[s] [MTGLQ] more harshly for behavior that already occurred and that [it] could not alter" (*James Sq. Assoc. LP v Mullen*, 21 NY3d at 250; *see Matter of Regina Metro. Co., LLC v New York State Div. of Hous. & Community Renewal*, 35 NY3d at 378-379).

Contract Clause

Furthermore, as applied retroactively here, FAPA violates the Contract Clause of the United States Constitution. The Contract Clause "'prohibits states from enacting [l]aw[s] impairing the Obligation of Contracts'" (*American Economy Ins. Co. v State of New York*, 30 NY3d 136, 149, quoting *Matter of Raynor v Landmark Chrysler*, 18 NY3d 48, 58 [internal quotation marks omitted]; *see* US Const, art I, § 10[1]). "The Supreme Court has repeatedly held that this language should not be read literally and that the States retain the power to safeguard the vital interests of [their] people" (*19th St. Assoc. v State of New York*, 79 NY2d 434, 442 [internal quotation marks omitted]). "The threshold inquiry is whether the state law has, in fact, operated as a substantial impairment of a contractual relationship" (*id.* [internal quotation marks omitted]). The initial inquiry contains "three components: whether there is a contractual relationship, whether a change in law impairs that contractual relationship, and whether the impairment is substantial" (*American Economy Ins. Co. v State of State of New York*, 30 NY3d at 150 [internal quotation marks omitted]).

The retroactive application of FAPA substantially impairs the contractual relationship between mortgagors and mortgagees by interfering with the contractual rights grounded in the mortgage. Even where the right to de-accelerate the debt is not explicitly set forth in the mortgage, "the lender's right to revoke an acceleration of the mortgage debt is grounded in the contractual relationship between lender and borrower, and more specifically in an optional/discretionary acceleration provision of the kind present in the Note and Mortgage here" (*U.S. Bank N.A. v Speller*, 80 Misc 3d 1233[A], 2023 NY Slip Op 51153[U], *6-7 [Sup Ct, Putnam County] [emphasis omitted]; *see Milone v US Bank N.A.*, 164 AD3d 145, 155). In *Milone v US Bank N.A.* (164 AD3d at 155), this Court rejected the plaintiff's contention that de-acceleration was not contractually permitted under the note. Similarly, here, "[s]ince the plain language setting forth the contractual right of the lender to accelerate the entire debt is discretionary rather than mandatory, [the lender] maintained the right to later revoke the acceleration" (*id.*). Applying FAPA retroactively substantially impairs that right.

"Even if a contract has in fact been impaired, the State may avoid a finding of unconstitutional impairment by demonstrating the existence of a significant and legitimate public purpose . . . such as the remedying of a broad and general social or economic problem" (*19th St. Assoc. v State of New York*, 79 NY2d at 443 [internal quotation marks omitted]). "Once a legitimate public purpose is identified, the inquiry shifts to whether the legislation at issue is based upon reasonable conditions and [is] of a character appropriate to the public purpose justifying [the legislation's] adoption" (*id.* [internal quotation marks omitted]).

Here, the substantial impairment of the contractual relationship is not reasonable, appropriate, or justified by the Legislature's purpose of thwarting unlawful litigation tactics and preventing mortgage lenders and loan services from "manipulat[ing] statutes of limitation to their advantage." The record reflects that the 2010 foreclosure action was discontinued by the agreement of the parties in order to reinstate the mortgage and give the borrowers the opportunity to avoid the foreclosure sale of their property, not in order to manipulate the statute of limitations. The retroactive application of FAPA under these circumstances would permit borrowers to use it as a sword to avoid the terms of mortgage agreements.

December 24, 2024                                                 Page 10.

Consequently, CPLR 3217(e) and 213(4), as amended by FAPA, should not be applied retroactively because these provisions, as applied to the facts of this case, violate the right to due process and the Contract Clause of the United States Constitution.

Accordingly, I vote to reverse the order dated May 12, 2023, insofar as appealed from, and, upon renewal, adhere to the prior determinations granting MTGLQ's motion pursuant to CPLR 3211(a) to dismiss the complaint insofar as asserted against it and denying 97 Lyman's cross-motion, in effect, for summary judgment on the complaint.

ENTER:

Darrell M. Joseph
Clerk of the Court

97 LYMAN AVENUE, LLC v MTGLQ INVESTORS, L.P.

*State of New York*
*Supreme Court, Appellate Division*
*Third Judicial Department*

Decided and Entered:  December 12, 2024                        CV-23-2041
                                                                                              CV-24-0597
_____

THE BANK OF NEW YORK
      MELLON, as Trustee,
                      Appellant,

      v

TERRI RICHARDS,                                                  MEMORANDUM AND ORDER

                      Respondent,
                      et al.,
                      Defendants.
_____

Calendar Date:  October 10, 2024

Before:  Clark, J.P., Pritzker, Reynolds Fitzgerald, Ceresia and Mackey, JJ.

_____

    *Akerman LLP*, Washington, DC (*Aliza Malouf* of counsel), for appellant.

    *Burgess & Associates PC*, Clifton Park (*Peter L. Burgess* of counsel), for
respondent.

_____

Pritzker, J.

    Appeals (1) from an order of the Supreme Court (James E. Walsh, J.), entered
October 18, 2023 in Saratoga County, which, among other things, granted defendant
Terri Richards' motion to dismiss the complaint against her, and (2) from a judgment
entered thereon.

    Plaintiff is the successor in interest to the mortgagee of defendant Terri Richards
(hereinafter defendant). In January 2007, plaintiff's predecessor in interest and defendant

-2-                                      CV-23-2041
                                         CV-24-0597

executed a note that was secured by a mortgage on real property located in the Village of Schuylerville, Saratoga County. In 2009, plaintiff's predecessor in interest accelerated the mortgage by commencing a foreclosure action. After an unsuccessful settlement conference, Supreme Court (Chauvin, J.) marked the case as administratively abandoned, because plaintiff, who had been assigned the mortgage in 2013, had failed to follow the court's directive and file for an order of reference. Five years later, plaintiff moved to restore the action to the active calendar, which Supreme Court (Nolan Jr., J.) denied, and, on appeal, this Court affirmed in March 2021 (*see Bank of N.Y. v Richards*, 192 AD3d 1228, 1231 [3d Dept 2021]). In July 2021, plaintiff commenced this foreclosure action to recover on the mortgage. After joinder of issue, and the passage of the Foreclosure Abuse Prevention Act (*see* L 2022, ch 821 [hereinafter FAPA]), Supreme Court (Walsh, J.) granted a motion filed by defendant seeking to dismiss the complaint as time-barred under CPLR 205-a. Plaintiff appeals.

Plaintiff contends that Supreme Court erred in applying CPLR 205-a (a) rather than CPLR 205 (a) because FAPA, which enacted CPLR 205-a (a), should not be applied retroactively. As relevant here, FAPA states that "[w]hile [a foreclosure] action is pending or after final judgment for the plaintiff therein, no other action shall be commenced or maintained to recover any part of the mortgage debt, including an action to foreclose the mortgage, without leave of the court in which the former action was brought" (RPAPL 1301 [3]). If leave is not acquired, the second action is "deemed discontinued" (RPAPL 1301 [3]). If the action is "adjudicated to be barred by the applicable statute of limitations, any other action seeking to foreclose the mortgage or recover any part of the same mortgage debt shall also be barred by the statute of limitations" (RPAPL 1301 [4]). CPLR 205-a (a) provides mortgagees a six-month grace period to refile a dismissed action when the dismissed action is not, as relevant here, terminated "for any form of neglect" (CPLR 205-a [a]). CPLR 3404 states that a case "marked 'off' or struck from the calendar" and not restored within a year after that time "shall be deemed abandoned and dismissed without costs for neglect to prosecute" (CPLR 3404). Previous to FAPA's enactment, a plaintiff received the same six-month grace period to refile the action pursuant to CPLR 205 (a), but that proviso is narrower, being limited to dismissals "for neglect to prosecute" and requiring the court to set forth on the record the specific conduct for such finding.

Bearing that in mind, if plaintiff is correct and Supreme Court erred in applying FAPA retroactively, we would need to determine whether plaintiff can benefit from the savings provision of CPLR 205 (a). However, if we determine that FAPA is to be applied

-3-     CV-23-2041
     CV-24-0597

retroactively, plaintiff concedes that CPLR 205-a (a) would be inapplicable to this action and, thus, it would be time-barred. To that end, this Court, as well as the First and Second Departments, have recently held that FAPA is to be applied retroactively (*see US Bank v Lynch*, ___ AD3d ___, ___, 218 NYS3d 854, 856 [3d Dept 2024]; *CitiMortgage, Inc. v Goldstein*, 230 AD3d 1219, 1224 [2d Dept 2024]; *Maneri v Residential Funding Co., LLC*, 227 AD3d 796, 797-798 [2d Dept 2024]; *Genovese v Nationstar Mtge. LLC*, 223 AD3d 37, 44-45 [1st Dept 2023]; *see also* L 2022, ch 821, § 10; NY Assembly Debate on Assembly Bill A7737B, Mar. 23, 2022 at 9). Therefore, the savings provision of CPLR 205-a (a) applies to this action. As such, plaintiff accelerated the mortgage by bringing the first foreclosure action in 2009 (*see* CPLR 213 [4]), and the six-year statute of limitations expired in 2015. Given that such action was administratively dismissed in 2013 as abandoned, which plaintiff does not dispute constitutes "a dismissal of the complaint for any form of neglect" (CPLR 205-a [a]), plaintiff is not entitled to the benefit of the savings provision of CPLR 205-a (a) (*see US Bank N.A. v Armand*, 220 AD3d 963, 966 [2d Dept 2023]). Thus, Supreme Court did not err in granting defendant's motion to dismiss the 2021 complaint as time-barred.

Plaintiff's related assertion, that retroactive application of FAPA would be unconstitutional as applied, is unpreserved as it was not raised in Supreme Court (*see Guck v Prinzing*, 100 AD3d 1507, 1508 [4th Dept 2012], *lv denied* 21 NY3d 851 [2013]).

Clark, J.P., Reynolds Fitzgerald, Ceresia and Mackey, JJ., concur.

-4-                                    CV-23-2041
                                       CV-24-0597

ORDERED that the order and the judgment are affirmed, with costs.

ENTER:

Robert D. Mayberger
Clerk of the Court